STATE OF CONNECTICUT *v.* DAVID J. CONGDON

REVIEW DIVISION OF THE SUPERIOR COURT

Decided June 16, 1967

*George Gilman,* public defender, for the defendant.

*C. Robert Satti,* assistant state's attorney, for the state.

BY THE DIVISION. The defendant, twenty-one years of age, pleaded guilty to an information in four counts. The first count charged breaking and entering with criminal intent in violation of § 53-76, which provides for imprisonment for not more than four years; the second and third counts charged

larceny of over $15 but less than $250, in violation of § 53-63, which provides for a fine of not more than $200 or imprisonment for not more than six months or both; and the fourth count charged theft of a motor vehicle in violation of § 53-57, which provides for imprisonment for not more than fifteen years for the first offense. The court imposed sentences on the four counts as follows: On the first count, to the state prison for a term of not less than one year and not more than three years; on the second and third counts, to the state jail for a period of six months, with execution suspended on each count; and on the fourth count, to the state prison for a term of two years. The sentences imposed made for an effective sentence of not less than one year and not more than five years in the state prison.

On May 29, 1965, the defendant and his codefendant went to a marina in Norwich, where they swam out to a forty-foot boat that was there. Boarding the boat, a skeleton key was used to gain entry. They removed a portable television set from the boat which was valued at $179. The television set was taken to the defendant's apartment, dried out and later sold to a third party. On July 10, 1965, the defendant and his codefendant went to a parking lot in the rear of a Norwich theater and proceeded to open parking meters. They then worked up the street for some distance, systematically opening meters with the use of vise grip pliers and taking money from them. They took about $27 in coins, and damage to the parking meters was estimated at $200. The two split the money, using it to buy gasoline for the defendant's car and on dates. On July 25, 1965, the defendant and his codefendant proceeded in the latter's car to a home in Norwichtown. There they pushed a 1965 Triumph car from the driveway, and, after getting it on the highway,

used the keys which were in the ignition to start it. The defendant drove the Triumph from the scene as the codefendant followed in his car. The stolen car was driven to the town of Bozrah, where it was taken off the road and hidden in some woods. It was then covered with some camouflage cloths, along with old cloths, branches and rocks. Between July 25, 1965, and August 1, 1965, they removed the chrome and took some black paint and painted it. The plan was to change the serial number and register it. On August 1, 1965, a farmer found the car and reported it to the police, who then kept the car under surveillance. On August 3, 1965, the defendant and a companion went to the car and were then picked up by the police.

The defendant's family background presents a dismal picture. He never knew his father and has had great difficulty with his stepfather, whom his mother married when the defendant was small. He has been shunted from one place to another over the years since his birth, but not always for reasons that were beyond his own control or that his own behavior and attitudes did not serve as contributing factors. His involvement with the law while in Florida gave indications of antisocial attitudes and a tendency to place himself or allow himself to be placed in situations that betrayed a definite lack of recognition of his obligation to conduct himself in accordance with accepted social standards for the breach of which society provides sanctions by laws. However, thereafter until his participation in the instant crimes, the defendant appeared to have determined upon a course that augured well for him. Since his return to Connecticut from Florida in 1961, his work record appeared good, and he enrolled in college as well as took correspondence courses and was utilizing his higher than average intelligence and ability to develop his potential. The

defendant was enrolled at college when he was arrested for the instant crimes.

This Division has considered with care all the documents made available to it, including those turned over to the Division at the hearing on this application, and has weighed the arguments and positions of the parties as adduced at the hearing before us. The state recommended sentences calling for confinement of the defendant in jail. The court commented at some length and concluded that both the defendant and his codefendant, who were sentenced at the same time, must be confined in the state prison and not in the state jail. The court said that these cases were "very serious in nature." The court pointed out that it had "examined these reports very carefully and . . . studied the excellent report submitted by the psychiatrist in both of these cases." It further stated that it thought that "long maximum penalties are in order in these cases so that the parole authorities can have some control over both of these young men when and if they decide to release them." Mindful of its function in the matter of the review of sentences imposed, this Division concludes that the sentences imposed upon this defendant are not to be disturbed.

The sentences imposed were fair and just and should stand.

PALMER, HEALEY and BARBER, Js., participated in this decision.